In The

# United States District Court

### For the Northern District Of Illinois, Eastern Division

FILED

SEP X 1 2010

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| JOHN F. TAMBURO | ) | **CIVIL COMPLAINT** |
| *Plaintiff* | ) | **WITH A JURY DEMAND** |
| | ) | |
| *-against-* | ) | ~~Case Number:~~ |
| | ) | |
| MIRAMED REVENUE GROUP, LLC | ) | 10CV5545 |
| (an Illinois Limited Liability Company) | ) | JUDGE ASPEN |
| *Defendant* | ) | MAG. JUDGE KIM |

NOW COMES BEFORE THIS HONORABLE COURT your Plaintiff, John F. Tamburo

("John"), appearing *pro se* and complaining as follows of the defendants named hereinabove:

### INTRODUCTION

1.  This is an action for damages brought by an individual consumer for Defendant's

    violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et

    seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et. seq.

### JURISDICTION AND VENUE

2.  The Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.

3.  This court properly exercises general personal jurisdiction over the Defendant because it

    is a business organized in, and conducting business from, the Northern District of Illinois.

4.  Defendant has submitted itself to the jurisdiction of the courts in Illinois inasmuch as it

    has registered with the Illinois Department of Professional Regulation as a collection

agency, evincing its intent to transact continuing business within Illinois. 735 ILCS 5/2-209(a)(1).

5.  Venue in this District is proper in that the defendant transacts business here and the conduct complained of occurred here.

## THE PARTIES

6.  John is an Illinois citizen and resident of Frankfort, Will County, Illinois.

7.  Defendant MIRAMED REVENUE GROUP, LLC ("MIRAMED") is an Illinois citizen, an Illinois limited Liability Company, with its main office located at 991 Oak Creek Drive, Lombard, IL 60148.

## THE FACTS

8.  John is a "consumer" as defined in FDCPA. See 15 USC § 1692a(3).

9.  MIRAMED is a "debt collector" as defined in FDCPA. See 15 USC § 1692a(6).

10. The alleged debt due and owing to Provena St. Joseph Hospital of Joliet, IL, which MIRAMED attempted, using means it knew and intended to be unlawful, to collect from John, is a "debt" as defined in FDCPA, because it was putatively for medical bills incurred by one of John's children. See 15 USC § 1692a(5).

11. MIRAMED first contacted John's former wife at a different telephone number, and told her that they were attempting to collect a debt from John, and solicited from her both his home and cellular telephone numbers. John's former wife gave MIRAMED both of the numbers which MIRAMED solicited from her, identifying which one was his home number and which one was his cellular number.

12. On or about January 30, 2010, John received a telephone call at home from MIRAMED (the "PHONE CALL").

13. The PHONE CALL was MIRAMED's first communication to John.

14. The person on the telephone identified himself as working for MIRAMED.

15. At no time during the PHONE CALL did the caller state that the call was from a debt collector or that any information obtained would be used for that purpose.

16. During the PHONE CALL, the caller:

   a. Alleged that John owed Provena St. Joseph Hospital the sum of $180.40 for medical services rendered to him on August 5, 2009.

   b. When John disputed that either he or his son John were ever treated at Provena St. Joseph Medical center and disputed the alleged debt, the caller said that he did not need to prove the debt was legitimate.

   c. The caller said that John must contact his health insurer, which was named in the telephone call but is redacted from this complaint, in order to find out what the debt was for, because the health insurer allegedly paid part of the alleged debt.

   d. John stated that he did not believe that he owed such a bill.

   e. The call ended.

17. John explicitly told the caller on the PHONE CALL, "DO NOT CALL ME AGAIN."

18. Subsequent to the PHONE CALL, John received a letter from MIRAMED purporting to conform to 15 USC § 1692g(a)(1) through (a)(5). John FAXed a letter of dispute to MIRAMED.

19. MIRAMED responded to the letter with its own letter dated February 15, 2010 (the "LETTER").

20. The LETTER stated that the services for which MIRAMED was collecting were for "tests ordered by a provider." However MIRAMED named neither the alleged tests performed nor the provider who ordered the test, or the original creditor, making it impossible for John to verify if he actually owed the alleged debt.

21. Attached to the LETTER was a cryptic computer printout that did not list any details about the "services" allegedly provided by Provena St. Joseph Hospital or the original creditor.

22. MIRAMED concluded the LETTER by threatening to resume collection action unless John fully paid the amount it demanded within ten days of the date of the LETTER.

23. On February 21, 2010, John faxed MIRAMED a continuing dispute, and demanded additional information from MIRAMED, inasmuch as the 30-day period given in 15 USC § 1692g(a) had not expired.

24. Notwithstanding John's demand and continuing dispute, on March 1, 2010 at 11:56M Central Time, John received a call on his cellular phone, and not his home telephone (the "SECOND CALL").

25. At no time did John use his cellular telephone number with the original creditor in this matter.

26. At no time did John give Miramed permission to contact him on his cellular telephone.

27. During the SECOND CALL:

    a. The caller identified herself as calling from MIRAMED;

    b. The caller told John that all calls are recorded;

    c. The caller demanded payment;

    d.  John protested that he had sent a dispute letter on February 21, 2010, and the caller feigned ignorance of that letter;

    e.  John noted that he had told MIRAMED not to call him on the telephone;

    f.  The call ended.

28.    At no time during the SECOND CALL did the caller state that the call was from a debt collector or that information obtained would be used for that purpose.

## CLAIM ONE – FDCPA

29.    15 USC § 1692e(11) prohibits "The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector."

30.    The PHONE CALL was an "initial oral communication" with John as defined by FDCPA, see 15 USC § 1692e(11).

31.    During the PHONE CALL, the caller, acting in his regular duties as an employee of MIRAMED, never stated that the call was from a debt collector and that any information obtained would be used for that purpose.

32.    During the SECOND CALL the caller, acting in her regular duties as an employee of MIRAMED, never stated that the call was from a debt collector.

33.    The PHONE CALL thus violated 15 USC § 1692e(11).

34.    The SECOND CALL thus violated 15 USC § 1692e(11).

35.  MIRAMED therefore committed a violation of FDCPA as set forth in this count, and owes John $1000 in statutory damages, plus actual damages that will be shown at trial, plus costs, plus any attorney fees that John may incur, should he retain counsel to appear in this case, in prosecuting this action.

## CLAIM TWO – FCDPA

36.  15 USC 1692g(b) states, in part: "If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."

37.  John sent a written notice of dispute to MIRAMED as required in 15 USC § 1692g(b).

38.  MIRAMED returned information that does not constitute "verification of the debt," specifically MIRAMED did not return any information to show what services the original creditor rendered that gave rise to the alleged debt.

39.  Additionally the LETTER, although deceptively couched in terms that stated that MIRAMED was not collecting upon the debt for ten days after the letter's date, demanded that John pay the entirety of the bill, and thus continued to collect within the 30-day dispute window, and before MIRAMED obtained an authentic or effective verification of the alleged debt.

40. MIRAMED, after John's letter of February 21, 2010, and without providing the name of the original creditor as demanded therein, and after John directed MIRAMED not to telephone him anymore, did contact John on on his cellular telephone on March 1, 2010 in the SECOND CALL to attempt to collect the alleged debt from him. Said call came less than ten days after John received MIRAMED's threat to start collecting after ten days had passed.

41. The SECOND CALL violated 15 USC § 1692g(b).

42. MIRAMED therefore committed a second and distinct violation of FDCPA as set forth in this count, and owes John $1000 in statutory damages, plus actual damages that will be shown at trial, plus costs, plus any attorney fees that John may incur, should he retain counsel to appear in this case, in prosecuting this action.

## CLAIM THREE – FDCPA

43. 15 USC § 1692c(a)(1) prohibits a debt collector from contacting an alleged debtor "at any unusual time or place known or which should be known to be inconvenient to the consumer."

44. John placed MIRAMED on notice not to contact him by telephone.

45. MIRAMED, from that point forward. knew or should have known that telephone contact after John's demand would be inconvenient to him.

46. Notwithstanding, MIRAMED placed the SECOND CALL to John's cellular telephone.

47. The SECOND CALL violated 15 USC § 1692c(a)(1).

48. MIRAMED therefore committed a third and distinct violation of FDCPA as set forth in this count, and owes John $1000 in statutory damages, plus actual damages that will be

shown at trial, plus costs, plus any attorney fees that John may incur, should he retain counsel to appear in this case, in prosecuting this action.

## CLAIM FOUR – TCPA

49.  Miramed originally called John on his residential line, in the PHONE CALL.

50.  Miramed, after receiving John's dispute letter, intentionally re-programmed his *cellular* telephone into its automatic computerized dialing system.

51.  Miramed intentionally made the SECOND CALL to John's cellular telephone.

52.  Cellular telephone calls by debt collectors are governed by 47 U.S.C. § 227b(1)(A)(iii), which provides, in pertinent part: "It shall be unlawful for any person . . . .to make any call . . .. using any automatic telephone dialing system or an artificial or prerecorded voice. . . to any telephone number assigned to a . . . telephone cellular service. . . for which the party is charged for the call."

53.  Miramed has therefore violated TCPA, and done so in an intentional manner.  Wherefore, John is entitled to statutory damages for the SECOND CALL in the amount of $1,500.00, plus costs, interests, and any attorney fees expended in collecting said damages, as provided in 47 U.S.C. § 227(b)(3).

## CLAIM FIVE – ILLINOIS COLLECTION AGENCY ACT

54.  MIRAMED is licensed and regulated as a collection agency by the State of Illinois under license number 017021026.

55.  When MIRAMED collects from Illinois citizens, it is subject to the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1 et. seq.

56.     There exists a private right of action for violations of this section. Said private right includes the right to receive punitive damages.

57.     MIRAMED violated 225 ILCS 425/9(a)(17) by disclosing the debt and the collection thereof to John's former wife.

58.     MIRAMED violated 225 ILCS 425/9(a)(31) by engaging in dishonorable, unprofessional and unethical conduct, inasmuch as the SECOND CALL flouts FDCPA.

59.     The aforementioned conduct by MIRAMED violates the ICAA. MIRAMED intended to violate the ICAA in order to terrorize John into paying it an alleged debt for which it could not obtain actual proof thereof.

60.     John has, as the proximate result of MIRAMED's unlawful conduct as set forth in this count, suffered actual damages in terms of emotional distress and anxiety and increased medical bills to handle the physical effects thereof.

61.     John is therefore entitled to actual damages as shall be proved at trial, and furthermore, punitive damages as the jury shall so assess.

62.     John is furthermore entitled to an order referring this matter to the Illinois Department of Professional Regulation to open a disciplinary case to assess fines of at least $5,000 and up to $10,000 for each individual incident proved at trial where MIRAMED violated Illinois law, and further to revoke MIRAMED's license number 017021026 due to its outrageous conduct in this matter. See 225 ILCS 425/9.

## CLAIM SIX – ILLINOIS CONSUMER FRAUD ACT

63.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") is codified at 815 ILCS 505/1 et. seq.

64.     MIRAMED violated the ICAA as set forth hereinabove in Count Seven.

65.     Violation of the ICAA is a per se violation of the ICFA, see 815 ILCS 505/2F.

66.     John has been damaged by MIRAMED's violations of the ICFA.  John has suffered actual damages in terms of emotional distress and anxiety and increased medical bills to handle the physical effects thereof.

67.     John is therefore entitled to actual damages as shall be proved at trial, and furthermore, punitive damages as the jury shall so assess.

## RELIEF

Wherefore, PREMISES CONSIDERED, John prays for all of the relief prayed in this complaint, plus all other relief that this honorable court may deem just and proper.

DATED September 1, 2010:

/s/ John F. Tamburo
John F. Tamburo
Plaintiff
PO Box 1656
Frankfort IL 60423
815-464-5010

## JURY DEMAND

NOW COMES Your Plaintiff, who respectfully demands trial by a jury.

DATED September 1, 2010:

/s/ John F. Tamburo
John F. Tamburo, Plaintiff

## DEMAND TO PRESERVE EVIDENCE

Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, documents and all other tangible things that relate to plaintiff and any other consumer who may have similar claims, the events described herein, any telephone call, campaign, account, sale or file associated with plaintiff and any account or number or symbol relating to any of them. Plaintiff further demands that defendant obtain agreement from any third party to do the same -- if any third party refuses, you are directed to notify the undersigned immediately so that measures may be taken to avoid spoliation of any relevant or discoverable materials or information. These materials are very likely relevant to the litigation of this claim. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

DATED September 1, 2010:

/s/ John F. Tamburo
John F. Tamburo, Plaintiff